52

U S... COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MIKI ANN DIMARCO, on behalf of herself and all other persons similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 03-CV-1006-B |
| | ) |
| WYOMING DEPARTMENT OF CORRECTIONS, DIVISION OF PRISONS, WYOMING WOMEN'S CENTER; JUDY UPHOFF, individually and as Director, Wyoming Department of Corrections; NOLA BLACKBURN, individually and as Warden of Wyoming Women's Center; Employees & Does I-X; BLACK & WHITE CORPORATIONS, A-J; and RED & YELLOW STATE AGENCIES, 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

This case arises out of the State of Wyoming's decision to place Plaintiff in solitary confinement because of her gender. The matter is before the Court on Defendants' Motion for Judgment on the Pleadings, or in the alternative, for Summary Judgment. Upon

reading the briefs, hearing oral argument, and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of the Parties and Jurisdiction

Plaintiff, Miki Ann DiMarco, is a resident of Douglas, Wyoming. Plaintiff was incarcerated at the Wyoming Women's Center from May 3, 2000, through July 10, 2001, for committing check fraud. Plaintiff was born intersexual (or as a hermaphrodite).[1] A person is intersexual if they have both male and female characteristics, including in varying degrees reproductive organs, secondary sexual characteristics, and sexual behavior. This condition is the result of an abnormality of the sex chromosomes or a hormonal imbalance during the development of the embryo.

Defendant, State of Wyoming Department of Corrections Division of Prisons ("WDOC"), has general control over all penal institutions in Wyoming. Defendant, Wyoming Women's Center ("WWC"), is a penal institution in Wyoming that has control and

---

[1] At the hearing, Defendants represented that their prison medical staff determined that Plaintiff was anatomically and biologically a "male." However, Plaintiff has chosen to live her life, and has functioned throughout her life, as a female. Plaintiff refers to herself with feminine pronouns throughout her pleadings. In accord with the Tenth Circuit's practice, this Court refers to litigants as the record suggests they prefer to be addressed. Brown v. Zavaras, 63 F.3d 967, 968 n.1 (10th Cir. 1995).

custody over women inmates.  The WWC is located in Lusk, Wyoming.
The individual Defendants are being sued as individuals and not in
their official capacity.  Defendant, Judith Uphoff, is the former
Director and Chief Administrative Officer of the Wyoming Department
of Corrections.  Defendant, Nola Blackburn, is the Warden of the
WWC.  Defendant, Viki McKinney, is a Major at the WWC.  Defendant,
Darlene Rea, is a Lieutenant at the WWC.  Defendant, Donna Lloyd,
is a Corporal at the WWC.

The Court has federal question and supplemental jurisdiction.
28 U.S.C. §§ 1331, 1343, 1367.  Venue is proper.  28 U.S.C. §
1391(b).

**Background**

Plaintiff was incarcerated in the WWC from May 3, 2000, to
July 11, 2001.  (Compl., at ¶ 15).  During Plaintiff's entire term
of incarceration, she was placed in segregated confinement in the
maximum security wing of the WWC.  (Am. Compl., at ¶ 24).
Plaintiff was placed in segregated confinement because of her
physical condition.  (Id.).

Segregated inmates are not entitled to the same privileges as
inmates in the general population.  Plaintiff, unlike the general
population inmates, was not permitted to: (1) attend Alcohol

3

Anonymous groups; (2) participate in the work release program; (3) access legal books and resources; (4) visit the gymnasium or general library; (5) have non-professional visitors; (6) have verbal contact with any other inmate; (7) attend religious services or activities; or (8) have certain articles of clothing and blankets in her cell. (Id. at ¶ 31). Moreover, Plaintiff believes that the WWC does not have a policy in place for the treatment of incarcerated intersexual prisoners. (Id. at ¶ 39).   Plaintiff requested to be transferred out of segregation and also requested accommodation for her physical condition.[2]   (Id. at ¶ 38). However, the WWC "deliberately and unreasonably" ignored such requests.   (Id.).

Plaintiff asserts five causes of action in her Amended Complaint: (1) a § 1983 claim under the Eighth Amendment; (2) a § 1983 claim under the Fourteenth Amendment[3]; (3) a claim under Title II of the Americans with Disabilities Act ("ADA"); (4) a claim for

---

[2] Plaintiff requested to be moved to a warmer cell because of her lupus and multiple sclerosis.

[3] Plaintiff filed three separate claims under the 14th Amendment.  This Court has combined them under one claim for review of Judgment on the Pleadings and Summary Judgment.  The three claims were violations of Procedural Due Process, Substantive Due Process, and Equal Protection.

negligent infliction of emotional distress; and (5) a claim for
intentional infliction of emotional distress.

### Legal Standards

I.   Motion for Judgment on the Pleadings.

A Rule 12(c) motion for judgment on the pleadings is reviewed
under the same standards as a motion to dismiss.  Fed. R. Civ. P.
12(c); Ramirez v. Dep't of Corrections, Colo., 222 F.3d 1238, 1240
(10th Cir. 2000).  Accordingly, a federal district court may
dismiss a cause of action under Rule 12(c) only when it appears
beyond a doubt that the plaintiff can prove no set of facts that
would entitle her to relief.  Conley v. Gibson, 355 U.S. 41, 45-46
(1957); Yousef v. Reno, 254 F.3d 1214, 1219 (10th Cir. 2001).  The
district court must assume the plaintiff's allegations are true and
construe them liberally in the light most favorable to her.
Conley, 355 U.S. at 45-46;  Grossman v. Novell, Inc., 120 F.3d
1112, 1118 (10th Cir. 1997).

In analyzing a motion for judgment on the pleadings, the
district court must "exclude from consideration all material
presented outside the pleadings." Villescas v. Richardson, 124 F.
Supp. 2d 647, 650 (10th Cir. 2000).  Moreover, the district court
must bear in mind that "dismissal of a complaint is a 'harsh remedy

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'"  Id. (quoting Summum v. Callaghan, 130 F.3d 906, 913 (10th Cir. 1997)).

II.  Motion for Summary Judgment.

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial.  Fed. R. Civ. P. 56(c); Nebraska v. Wyoming, 507 U.S. 584, 590 (1993).  Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Nelson v. Geringer, 295 F.3d 1082, 1086 (10th Cir. 2002).  "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment."  Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997).

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing summary judgment.  Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996).  The movant bears the initial burden of demonstrating the absence of

6

evidence to support the non-moving party's claims.  <u>Celotex Corp.</u>
<u>v. Catrett</u>, 477 U.S. 317, 325 (1986).  When the non-moving party
bears burden of proof at trial, the burden then shifts to it to
demonstrate the existence of an essential element of its case.  <u>Id.</u>
To carry this burden, the non-moving party must go beyond the
pleadings and designate specific facts to show there is a genuine
issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
251 (1986); <u>Ford v. West</u>, 222 F.3d 767, 774 (10th Cir. 2000).  The
mere existence of a scintilla of evidence in support of the non-
moving party's position is insufficient to create a "genuine" issue
of disputed fact.  <u>Lawmaster v. Ward</u>, 125 F.3d 1341, 1347 (10th
Cir. 1997).

     III.    <u>Qualified Immunity</u>.

     In evaluating whether a defendant is entitled to qualified
immunity, a court first must determine whether the facts as alleged
in the complaint show a possible violation of a federally protected
right.  <u>Roska v. Peterson</u>, 304 F.3d 982, 989 (10th Cir. 2002).  If
the court determines that the plaintiff has alleged facts
sufficient to show a violation of a federally protected right, the
court then must decide whether that right was clearly established
such that a reasonable person in the defendant's position would

have known that her conduct violated that right. _Id._, at 989.  In
the context of a Rule 12(c) motion, the motion must be denied if
the Plaintiff carries this burden.  _Robbins v. Bureau of Land_
_Mgmt._, 252 F. Supp. 2d 1286, 1292 (D. Wyo. 2003).

## **Analysis**

I.   Eighth Amendment Conditions-of-Confinement Claim.

Defendants  argue  that  the  placement  of  Plaintiff  in
administrative  segregation  as  a  protective  measure  does  not
constitute cruel and unusual punishment _per se_.  (Mem. of Law in
Supp. of Defs.' Mot. for J. on the Pleadings or Summ. Judgment
("Defs.' Mem."), at p. 7).  Plaintiff responds that the placement
of  Plaintiff  in  segregation  was  cruel  and  unusual  punishment.
Plaintiff  claims  many  questions  of  fact  arise  out  of  the  Eighth
Amendment  violation  such  as  whether  or  not  fourteen  months  of
incarceration  is  atypical  in  relation  to  the  ordinary  incidents  of
prison  life  and  whether  the  segregated  confinement  was  extremely
disproportionate,  arbitrary,  unnecessary,  or  without  sufficient
penological  justification.  (Pl.'s Opp'n to Defs.' Mem. of Law in
Supp. of Mot. for J. on the Pleadings or Summ. Judgment ("Pl.'s
Mem."), at p. 8).

8

A.   Eighth Amendment Standards.

The Eighth Amendment prohibits states from inflicting cruel and unusual punishment on those convicted of crimes within their jurisdiction.   U.S. Const. amend. VIII; <u>Perkins v. Kan. Dep't of Corr.</u>, 165 F.3d 803, 809 (10th Cir. 1999).   The Eighth Amendment requires that prison officials "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."   <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1310   (10th Cir. 1998).

To hold a prison official "personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component."   <u>Craig v. Eberly</u>, 164 F.3d 490, 495 (10th Cir. 1998).   Under the objective component, the deprivation must be "sufficiently serious," which means that the prison official deprived the inmate of the minimal civilized measure of life's necessities.   <u>Barney</u>, 143 F.3d at 1310.   Under the subjective component, the prison official must have violated the plaintiff's constitutional rights with a "sufficiently culpable state of mind," which means the prison official was deliberately indifferent to the

9

inmate's health or safety.  <u>Craig</u>, 164 F.3d at 495.  The infliction of psychological pain can violate the Eighth Amendment.  <u>Perkins</u>, 165 F.3d at 810.

In <u>Perkins</u>, the Tenth Circuit stated that the "Eighth Amendment forbids the state to punish people for a physical condition, as distinct from acts."  <u>Id.</u>  There, the Tenth Circuit indicated that prison officials could not punish an inmate solely for being HIV positive.  <u>Id.</u>; <u>see also</u> <u>Anderson v. Romero</u>, 72 F.3d 518, 526 (7th Cir. 1995); <u>Langley v. Coughlin</u>, 709 F. Supp. 482, 485 (S.D. N.Y. 1989) (holding that placement of non-mentally ill women in a solitary confinement block with mentally ill women could raise a conditions-of-confinement claim under the Eighth Amendment).  Neither party, nor the Court, was able to find any cases involving the Eighth Amendment and an intersexual inmate, but the Court believes that the HIV situation in <u>Perkins</u>, supra, may be analogous to the condition alleged by the Plaintiff.

B.    Application.

Plaintiff has alleged what this Court will term as an "excessive isolation" conditions-of-confinement claim; that is, Plaintiff's Amended Complaint alleges that she was placed in solitary confinement, which is a form of punishment within the WWC

10

solely on the basis of her physical condition.  More specifically,
Plaintiff was allegedly being punished solely on the basis of an
immutable physical characteristic, namely, her intersexuality.

The    alleged    constitutional    deprivation    must    have    a
"sufficiently serious" objective component.  Craig, 164 F.3d at
495. However, this inquiry turns not only on the severity of the
alleged deprivations, but also on their duration.  Barney, 143 F.3d
at 1311.  A question of fact is whether or not the isolation of
Plaintiff was "sufficiently serious" but also whether or not
fourteen   months   in   isolation   based   on   one's   physical
characteristics, even if for alleged safety reasons, is atypical
and a significant hardship.

Plaintiff factually alleges in her Amended Complaint that she
was compelled to serve her entire fourteen months in segregated
confinement at least as rigorous as that reserved for seriously
violent prisoners.   In addition, even if the segregation was
necessary for the safety of Plaintiff and other prisoners, the
Court questions whether less harsh alternatives were available.

The   panoply   of   deprivations   allegedly   resulted   in   the
withholding of legal and general library privileges, visitation
privileges, religious services, social contact with other inmates,

11

and unfettered group counseling. (Pl.'s Mem., p. 11).  Defendants
deny the withholding of all of these privileges and services.
Accepting the allegations in Plaintiff's Amended Complaint as true
and viewed in light most favorable to Plaintiff, the alleged
deprivations allow Plaintiff to survive the attack on the pleadings
and the factual question allows the Eighth Amendment claim to go
forward.   Therefore, Defendants' Motion is denied on the Eighth
Amendment claim.

II.   Fourteenth Amendment Procedural Due Process Claim.

Defendants contend that although state laws and regulations
may create liberty interests which are protected by the Due Process
Clause of the Fourteenth Amendment, such liberty interests are
limited to situations where the confinement imposes atypical and
significant hardship on the inmate in relation to the ordinary
incidents of prison life. (Defs.' Mem., at p. 10).   Defendants
further contend that an inmate has no independently protected right
under the federal constitution to be placed in the general prison
population.   (Id., at 11).   Plaintiff responds that she was
deprived of her constitutional due process since she received no
notice of the charges against her and not presented an opportunity
to present her views to the prison officials before or after they

transferred her to solitary segregation.  (Pl.'s Mem., at p. 12).

A.   Fourteenth Amendment Standards.

The Fourteenth Amendment prohibits a state from depriving an inmate of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Chambers v. Colo. Dep't of Corr., 205 F.3d 1237, 1242 (10th Cir. 2000).  An inmate is entitled to procedural due process when the state interferes with her protected liberty interest.   Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).   Protected liberty interests can be created by the Due Process Clause on its own accord, or by state statute or regulation.  Chambers, 205 F.3d at 1242.

In  Sandin v. Conner, the Supreme Court examined the circumstances under which an inmate in a state prison is afforded a liberty interest protected by the Due Process Clause.  515 U.S. 472, 474 (1995).  There, the Court held that an inmate who was not allowed to present witnesses at a disciplinary hearing before being placed in segregation was not deprived of a liberty interest protected by the Due Process Clause because his punishment mirrored those imposed upon other similarly situated inmates in administrative segregation.  Id. at 486.  The Court explained that state created liberty interests "will be generally limited to

13

freedom from restraint, which while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In other words, a decision by prison officials to place an inmate in administrative segregation does not implicate the Due Process Clause unless it is atypical and significant. Id. at 486. Placement in segregation is atypical and significant when it exceeds the punishment of similarly situated inmates in duration or degree of restriction. Id.

Additionally, it is inappropriate for a district court to dismiss a claim alleging that an inmate has been deprived of a liberty interest without evidence showing the typical conditions imposed upon inmates in administrative segregation. Gaines v. Stenseng, 292 F.3d 1222, 1225-26 (10th Cir. 2002). The district court must have evidence to examine before it can determine whether the conditions of the inmate's confinement present the type of atypical and significant deprivation that implicates a liberty interest. Perkins, 165 F.3d at 808-09; Taylor v. Stewart, 49 Fed. Appx. 262, 264 (10th Cir. 2002).

14

B.   Application.

Plaintiff claims and supports her allegation that she was placed into administrative isolation without a hearing due solely to her physical characteristics.  Further, Plaintiff claims to have been deprived of various rights and privileges to which other prisoners were entitled and such deprivation, particularly through its long duration, constitutes a loss of a liberty interest without due process.  In taking the Plaintiff's allegations as true, there is enough evidence to give rise to a Fourteenth Amendment claim. Dismissal on the pleadings would be too harsh of a remedy considering the allegations.   Therefore, this Court will not dismiss the Amended Complaint on the Fourteenth Amendment claim.

To succeed on a procedural due process claim under 42 U.S.C. § 1983, Plaintiff must first demonstrate that she possessed a protected liberty interest and was deprived of that interest without due process.  Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).

Under Hewitt, 459 U.S. at 471-72, the Court held that because Pennsylvania state law had established "specific substantive predicates" that must exist before restrictive confinement could be imposed, the inmate had a protected liberty interest in avoiding

15

such confinement.   Therefore, the question turns to whether there is a "substantive predicate" in the Wyoming prison rules or regulations which create a required due process proceedings with regard to segregated confinement.

An issue in the case at hand is the State of Wyoming's "substantive predicate" which are in place with regard to administrative confinement.   Plaintiff contends that the Code of Inmate Discipline establishes regulations which entitles prisoners to notice and a hearing.   Therefore, if the State of Wyoming has regulations on administrative confinement, Plaintiff was not afforded that procedural due process.

In addition, an issue which necessitates answering is whether there was an "atypical and significant hardship", giving rise to a protected liberty interest.   Whether Defendants' actions resulted in atypical and significant hardship will be a rather complex and fact intensive inquiry.   Therefore, this matter cannot be determined solely as a matter of law.   A factual inquiry is still necessary to determine if Plaintiff has a protected liberty interest in unsustained segregated incarceration during her entire prison term.   Therefore, summary judgment is precluded.

16

III.    <u>Americans With Disabilities Act Claim</u>.

Defendants argue that Plaintiff's intersexuality is not a disability within the meaning of the ADA because it does not substantially limit any of her major life functions. (Defs.' Mem., at pp. 14-15). In addition, Defendants argue that under Title II, only a "public entity" can be sued and therefore, Plaintiff cannot sue a state official in his or her individual capacity. (<u>Id.</u>, at p. 13). Plaintiff concedes there is no personal liability under the ADA. (Pl.'s Mem., at p. 17). Plaintiff responds that her ambiguous gender condition substantially limits one or more of her major life activities. (<u>Id.</u>, at pp. 17-18).

A.   ADA Standards.

Title II of the ADA prohibits discrimination in public services furnished by governmental entities. 42 U.S.C. §§ 12131-12165. In part, Title II provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. In order to state a claim under Title II of the ADA, a plaintiff must prove that: (1) she is a qualified individual with a disability; (2) she was excluded from the benefits or

services of a public entity or otherwise was discriminated against
by the public entity; and (3) such exclusion, denial of benefits,
or discrimination was because of her disability.   <u>Gohier v.
Enright</u>, 186 F.3d 1216, 1219 (10th Cir. 1999).

Under Title II of the ADA, a "qualified individual with a
disability" is someone who, with or without reasonable
modifications, meets the essential eligibility requirements to
receive public services or participate in a public program.   42
U.S.C. § 12131(2).  The ADA defines "disability" as a "physical or
mental impairment that substantially limits one or more of the
major life activities of the individual."  42 U.S.C. § 12102(2)(A).

B.   Application.

Plaintiff has not alleged sufficient facts to state a claim
under Title II of the ADA.   While Plaintiff has alleged that her
intersexuality substantially limits her major life activities, she
has failed to prove that possessing ambiguous, undeveloped
genitalia and lacking definitive physical gender qualities
significantly impairs these major life activities.

As used in Title II, the term "disability" means the
individual: (1) has a physical or mental impairment that
substantially limits one or more of her major life activities; (2)

18

has a record of such an impairment; or (3) is regarded as having
such an impairment.  42 U.S.C. § 12102(2).  This Court does not
believe  Plaintiff has a "disability" under the ADA.  Plaintiff's
intersexuality characteristics have not limited one or more of her
major life activities.  Plaintiff's allegations regarding this
alleged disability are not sufficient to establish that she is
"disabled" for purposes of Title II of the ADA.  Plaintiff fails
the first step in the Gohier analysis in her Amended Complaint and
Plaintiff's Response consequently Plaintiff is not a qualified
individual with a disability.   Therefore, this Court is granting
summary judgment to Defendants on this Title II claim.

IV.   State Tort Claims (Negligent and Intentional Infliction of
      Emotional Distress).

     Defendants argue that both the Eleventh Amendment to the
United States Constitution and the doctrine of sovereign immunity
bar Plaintiff's claims for intentional and negligent infliction of
emotional distress.

     A.    State Tort Claims Standards.

     The Wyoming Governmental Claims Act ("WGCA"), Wyo. Stat. Ann.
§§ 1-39-101 to 1-39-121 (2002), governs the procedural and
substantive aspects pertaining to tort claims asserted against the
State of Wyoming and its public employees.  The Eleventh Amendment

to the United States Constitution bars state law claims brought in federal court against a state or a state agency unless the state has expressly waived its Eleventh Amendment immunity or Congress has abrogated Eleventh Amendment immunity. <u>Mascheroni v. Board of Regents of the Univ. of California</u>, 28 F.3d 1554, 1559-1560 (10th Cir. 1994).

The Tenth Circuit recently held that state tort claims were barred because the WGCA immunizes the state and its employees from tort liability. <u>Brockman v. Wyoming Dept. of Family Serv.</u>, 342 F.3d 1159, 1169 (10th Cir. 2003). In discussing the tort of intentional infliction of emotional distress, the Wyoming Supreme Court has held that "there is nothing in any section of the [WGCA] . . . which would serve to abrogate sovereign immunity for these claims." <u>Id.</u> (quoting <u>Routh v. State</u>, 952 P.2d 1108, 1116 (Wyo. 1998)).

B. Application

The State of Wyoming has not waived its Eleventh Amendment immunity against the state law claims brought in federal court. In addition, the United States Congress has not abrogated Eleventh Amendment immunity against state law claims brought in federal

20

court.  Therefore, the Eleventh Amendment bars Plaintiff's claims
for intentional and negligent infliction of emotional distress.

In addition, the WGCA does not waive sovereign immunity for
the tort of intentional infliction of emotional distress.  See
Routh v. State, ex rel. Wyoming Workers' Compensation Div'n, 952
P.2d 1108, 1116 (Wyo. 1998).  Sovereign immunity also has not been
waived for the tort of negligent infliction of emotional distress.
Taken in light of the Tenth Circuit's ruling in Brockman, this
Court dismisses Plaintiff's state tort claims against the State of
Wyoming and its employees.

## Conclusion

For the aforementioned reasons, it is hereby **ORDERED** that
Defendants' Motion for Judgment on the Pleadings, or in the
alternative Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.
Defendants' Motion for Judgment of the Pleadings, or in the
alternative Summary Judgment is **GRANTED** on the alleged violation of
Title II of the Americans with Disabilities Act and the state tort
claims of intentional infliction of emotional distress and
negligent infliction of emotional distress. Defendants' Motion for
Judgment on the Pleadings, or in the alternative Summary Judgment

21

is **DENIED** on the alleged violations of the Eighth Amendment and

Fourteenth Amendment.

Dated this _____10th_____ day of November, 2003.

Clarence A. Brimmer
United States District Court Judge

22