FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

**JUN 1 8 2004**

Betty A. Griess, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MIKI ANN DIMARCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WYOMING DEPARTMENT OF | ) | Case No. 03-CV-1006-B |
| CORRECTIONS, DIVISION OF | ) | |
| PRISONS, WYOMING WOMEN'S | ) | |
| CENTER; JUDY UPHOFF, | ) | |
| individually; NOLA BLACKBURN, | ) | |
| individually; VIKI McKINNEY, | ) | |
| individually; KAREN REA, | ) | |
| individually; DONNA LLOYD, | ) | |
| individually; Employees & Does | ) | |
| I-X; BLACK & WHITE | ) | |
| CORPORATIONS, A-J; and RED & | ) | |
| YELLOW STATE AGENCIES, 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## ORDER AWARDING ATTORNEY'S FEES AND COSTS

Plaintiff Miki Ann DiMarco's Motion for Award of Attorney's
Fees, Taxable Costs, Expert Costs, Non-Taxable Litigation Expenses
and Upward Adjustment and Defendants' opposition thereto came
before the Court for hearing on June 4, 2004. Counsel for the
parties appeared, presented evidence and their arguments with

respect to Plaintiff's Motion.  The Court, having considered the
motion and response, the arguments of counsel, the applicable law,
and being fully advised, **FINDS** that the Motion for Attorney Fees
and Costs should be **GRANTED**, as provided below.

    I.   **CASE BACKGROUND**.

Plaintiff Miki Ann DiMarco brought this suit against the
Wyoming Department of Corrections, Division of Prisons, Wyoming
Women's Center; Judy Uphoff, Nola Blackburn, Viki McKinney, Darlene
Rea, and Donna Lloyd asserting five causes of action: (1) a § 1983
claim under the Eighth Amendment; (2) a § 1983 Procedural Due
Process claim under the Fourteenth Amendment; (3) a § 1983
Substantive Due Process claim under the Ninth and Fourteenth
Amendments and Wyoming Constitution § 97-1-036; and (4) a § 1983
Equal Protection claim under the Fourteenth Amendment.[1]

---

   [1]  Plaintiff filed the original complaint in January 24,
2003.  In the Complaint, Plaintiff alleged violations of the
Eighth Amendment, the Fourteenth Amendment, Title II of the
Americans with Disabilities Act and various state law claims.
Plaintiff sought monetary damages and an injunction prohibiting
"isolating or segregating intersexed person."  On July 18, 2003,
upon a Defendants' Motion for Judgment of the Pleadings this
Court ruled the Plaintiff had potential claims under the Eighth
Amendment, the Due Process Clause of the Fourteenth Amendment and
Title II of the ADA.  Plaintiff filed an Amended Complaint which
abandoned her goal of obtaining an injunction and sought monetary
damages exclusively.  On a second hearing, this Court entered an
Order granting in part and denying in part Defendants' Motion for

This Court conducted a bench trial starting on January 20, 2004 and ending on January 29, 2004.  Following the bench trial, this Court denied Plaintiff's claims under the Eighth Amendment and the Equal Protection clause of the Fourteenth Amendment.  This Court found a violation of the Due Process clause and awarded damages in the amount of $1,000.  In addition, this Court held that Defendants are to pay Plaintiff's reasonable attorney's fees, court costs and expert costs pursuant to 42 U.S.C. § 1988(b) & (c) and that Plaintiff was the "prevailing party" in her claim for violation of the Due Process Clause of the Fourteenth Amendment.

II.   **ENTITLEMENT TO FEES AND COSTS AS A PREVAILING PARTY**.

Plaintiff, Miki Ann DiMarco, is the prevailing party in this action.  This Court awarded her damages for Defendants' violation of the Due Process Clause.  As the prevailing party in a § 1983 action, Plaintiff is entitled to attorneys' fees and costs.  42 U.S.C. § 1988(b).  However, before this Court can go through an analysis to calculate a reasonable attorneys' fee, this Court must address Defendants' contention that the fees and costs should be

---

Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment.  This Court dismissed Plaintiff's Title II ADA claim and the state law claims.  The remaining claims were under the Eighth Amendment and the Due Process and Equal Protection clauses under the Fourteenth Amendment.

nominal, if at all, because Plaintiff's award was only for nominal damages.

A.   **Nominal Damages**.

Defendants contend that this Court must award nominal attorneys' fees and costs since Plaintiff was awarded nominal damages for procedural due process violations since Plaintiff could not prove actual damages.  Defendants argue that under Carey v. Piphus, 435 U.S. 247 (1978) and Farrar v. Hobby, 506 U.S. 103 (1992) what remains for this Court is to "announce a sensible decision to award low fees or no fees" at all.  Farrar, 506 U.S. at 117-18.

The Tenth Circuit has addressed the United States Supreme Court ruling in Farrar v. Hobby and Justice O'Connor's associated concurring opinion.  See Barber v. T.D. Williamson, Inc., 254 F.3d 1223 (10th Cir. 2001).  In Barber, the jury found for Mr. Barber on a hostile work environment claim but concluded that he failed to prove the discriminatory termination and retaliatory discharge claims and awarded him nominal damages in the amount of one dollar. The Tenth Circuit, in reviewing the Magistrate Judge's determination of attorney fees, analyzed and developed some criteria under the Farrar holding.

4

The Tenth Circuit in reviewing the Farrar holding stated:

> In Farrar, the Supreme Court held that, "when a plaintiff
> recovers only nominal damages because of his failure to
> prove an essential element of his claim for monetary
> relief [such as actual, compensable injury], the only
> reasonable [attorney's] fee is usually no fee at all."
> Farrar, 506 U.S. at 115. Notably, Justice O'Connor joined
> the opinion of the majority but also authored a special
> concurrence. In her concurrence, she agreed with the
> conclusion of the majority that, "when the plaintiff's
> success is purely technical or de minimis, no fees can be
> awarded." Id. at 117 (O'Connor, J., concurring). However,
> she explained that not all nominal damages awards are in
> fact de minimis: As she put it, "nominal relief does not
> necessarily a nominal victory make." Id. at 121
> (O'Connor, J., concurring); see also id. at 124 (White,
> J., dissenting) (noting that the majority did not hold
> "that recovery of nominal damages never can support the
> award of attorney's fees"). As to what makes a victory
> nominal or otherwise, she -- like the majority -- found
> "the difference between the amount recovered and the
> damages sought" to be a relevant consideration. Id. at
> 121 (O'Connor, J., concurring). But, unlike the majority,
> she also identified two other factors of import: first,
> "the significance of the legal issue on which the
> plaintiff claims to have prevailed" and, second, the
> accomplishment of "some public goal other than occupying
> the [**16]  time and energy of counsel, court, and
> client." Id. at 121-22 (O'Connor, J., concurring).

Barber, 254 F.3d at 1299.  In her concurrence, Justice O'Connor

listed three factors which have become known as the "O'Connor

factors."  Those factors are: 1) the difference between the amount

recovered and the damages sought; 2) the significance of the legal

issue on which the plaintiff claims to have prevailed; and 3) the

accomplishment of "some public goal other than occupying the time

and energy of counsel, court and client." Farrar at 121-122.  The
Tenth Circuit has said that it looks to the "O'Connor factors" in
determining a reasonable fee."  Barber at 1230.

In dealing with the first factor, the difference from the
requested $44,000 to the $1,000 awarded is a large difference.
The litigation accomplished little beyond giving Plaintiff the
moral satisfaction of knowing that a federal court concluded that
her rights had been violated in some way.  See Id. at 1230.

The second factor is the significance of the legal issue on
which Plaintiff claims to have prevailed.  The Tenth Circuit stated
this meant "the second factor. . . goes beyond the actual relief
awarded [which is the focus of the first factor] to examine the
extent to which the plaintiff[] succeeded on [her] theory of
liability."  Id. at 1231 (quoting Phelps v. Hamilton, 120 F.3d
1126, 1132 (10th Cir. 1997)).  Plaintiff prevailed only on a Due
Process claim.  This Court found that the Wyoming Women's Center
could have created better housing quarters for Plaintiff and
therefore, the 438 days of confinement created a protected liberty
interest since the conditions in Pod 3 were different than those in
the West Wing of the facility and constituted an atypical and
significant hardship.  Plaintiff succeeded in showing that the

6

Wyoming Women's Center should have provided better quarters and should have allowed her to meet with the staff to attempt to come up with a better solution to an unique situation for the safety of all those involved.

Finally, the third factor - i.e., the accomplishment of a public goal "other than occupying the time and energy of counsel, court, and client." The Tenth Circuit has taken a broad approach to this factor. The public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct. Barber at 1232.

In Koopman v. Water Dist. No. 1 of Johnson County, Kansas, 41 F.3d 1417 (10th Cir. 1994) the court stated:

> [in Farrar, the plaintiff's] suit could not fairly be said to have any prospect of benefitting anyone other than [himself]. [Here,] Koopman's victory, like Farrar's, did little for him personally, but in sharp contrast to Farrar's, had significant implications in establishing basic rights for public employees holding a similar property interest.

Id. at 1421.   In the case at hand, Plaintiff DiMarco did little for her personally other than provide her sense of knowing that her Constitutional rights were violated during her incarceration (even

though for many, including Plaintiff, that is a greater reward than any amount of monetary award). Although it is true Plaintiff DiMarco received only a nominal award, the present and future inmates of the Wyoming Women's Center, any other Wyoming Department of Corrections facility or maybe any other state or federal detention center will benefit by having their rights affirmed. This Court believes the ruling in the bench trial vindicated an important right of Plaintiff DiMarco and will prevent the same type of unconstitutional practices in the future. Therefore, the nominal monetary award is not de minimus.

In considering the 'general rule' that attorneys' fees are awarded to prevailing parties absent special circumstances which would make such an award unjust and the three-part analysis identified by Justice O'Connor in her special concurrence, this Court finds that Plaintiff has met her burden and the award of attorneys' fees and costs should be granted and not at a nominal amount. This Court finds that Plaintiff's counsel took this case knowing the monetary recovery would not come close to covering their financial outlays; however they still choose to pursue the case to also promote a public purpose and achieve tangible results such as sparking a change in prison policy and vindicating a wrong

8

against the Plaintiff.  Finally, in connection with the Plaintiff's
claim, the Court will also consider that the Defendants are our own
State government and that its taxpayers are the ones who must pay
any award.

    B.    **Expert Fees**.

    In this Court's Memorandum of Order and Judgment, the Court
awarded expert fees pursuant to 42 U.S.C. § 1988(b)&(c).  However,
42 U.S.C. § 1988(b)&(c) allows the Court to award expert fees under
section 1981 or 1981a actions.  Neither § 1981 or § 1981a was at
issue in this matter.  Plaintiff even admits that expert fees are
not available in § 1983 actions such as the case at hand.  But the
Court recognizes the Plaintiff's counsel had to engage Mr. Hellman
who was of great help to the Court.  Such services should not be a
gift to the Court of the State.  This Court recognizes the fact
that you cannot try a case of this magnitude without expert
witnesses.   Plaintiff's counsel presented three very useful
witnesses: Mr. Hellman, Dr. Martha Schilling and Dr. Matthew Taylor
and they should all be covered.  The Court is therefore increasing

the amount of counsel fees to be awarded herein by $13,404.96[2] to repay Plaintiff's counsel for that expenses.

## ANALYSIS

Attorneys' fees are initially calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. This is commonly referred to as the "lodestar" amount. Blum v. Stenson, 465 U.S. 886, 888 (1984); Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998). The party seeking the award has the burden of persuading the Court that the hours expended and the rate sought are both reasonable. Lucero v. City of Trinidad, 815 F.2d 1384, 1385 (10th Cir. 1987).

As to services provided by non-lawyers, the court may award them separately as part of the fee for legal services. Case, 157 F.3d at 1249. The Court should scrutinize the reported hours and the suggested rates of the paralegal in the same manner it scrutinizes lawyer time and rates. Id.

---

[2]  Mr. Hellman: $6,376.21; Dr. Schilling: $5,063.75; Dr. Taylor: $1,965.00.

A.   **The Hours**.

The first step in calculating the "lodestar" figure used to award attorney fees is to determine the reasonable number of hours counsel spent on the case.   "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting **meticulous, contemporaneous** time records. . . A district court is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and **fail to document** adequately how he or she utilized large blocks of time. Case, 157 F.3d at 1249.   Once the district court has adequate time records before it, it must then ensure that the winning attorneys have exercised "billing judgment."   Id. at 1250 (citing Ramos v. Lamm, 713 F.2d 546, 553 (10th Cir. 1883)).

"Hours that an attorney would not properly bill his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable."   Case, 157 F.3d at 1250. After examining the specific tasks and whether they are properly chargeable, the court looks at the hours expended on each task to determine if they are reasonable.   Id.

> In determining what is a reasonable time in which to perform a given task or to prosecute the litigation as a whole, the court should consider that what is reasonable in a particular case can depend upon facts such as the

11

complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side. Another factor the court should examine in determining the reasonableness of hours expended is the potential duplication of services. "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." . . . The Court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required.

Case, 157 F.3d at 1250 (citing Ramos, 713 F.2d at 553). The court may also reduce the reasonable hours awarded if "the number [of compensable hours] claimed by counsel includes hours that were unnecessary, irrelevant and duplicative." Carter v. Sedgwick County, Kan., 36 F.3d 952, 956 (10th Cir. 1994).

Because mandating that the district court identify hours reasonably expended by billing entry or litigation activity would be practically impossible, "there is no requirement . . . that district courts identify and justify each disallowed hour. Nor is there any requirement that district courts announce what hours are permitted for each legal task." Case, 157 F.3d at 1250 (quoting Mares, 801 F.2d at 1202).

Plaintiff's counsel and paralegal seeks compensation for 710.75 hours.[3] Defendants argue that those hours are excessive for

---

[3]   Tom Sedar 161.30 hours at $200 hour; Tom Sedar 25.50 hours at $100 per hour (travel time); Hampton Young 309.20 hours at $175 per hour; Hampton Young 20.00 hours at $87.50 per hour

a trial to the bench denoted as non-complex and in which Plaintiff presented only nine witnesses, including herself over three days. Defendants argue that the time spent "researching" various areas of the law should not be chargeable to the adverse party. The Tenth Circuit has held that time spent reading background material designed to familiarize the attorney with the area of the law would normally be absorbed into a firm's overhead and that, therefore, attempting to charge an adversary with time spent conducting background research is presumptively unreasonable. Case, 157 F.3d at 1250 (citing Ramos, 713 F.2d at 554).

In a review of the billing statement attached as Exhibit A to Plaintiff's Certificate of Fees and Bill of Costs, this Court finds a total of 29 entries amounting to 168.9 hours associated with legal research. Hampton Young billed 136.2 hours and Norman Newlon billed 32.7 hours. This Court noted that many of these hours were also spent drafting documents, reviewing the file, meeting with witnesses and their client. However, on twenty different entries Plaintiff's counsel did not separate out the time associated with each task. It is the duty of Plaintiff's counsel and not the Court

---

(travel time); Norman Newlon 68.75 hours at $175.00 per hour; Norman Newlon 15.50 hours at $87.50 per hour; and Marla Cox 68.75 hours at $45.00 per hour.

13

to detail the billing in order to allow their client and this Court to separate out their time by task.   This Court will deduct a portion of time billed to research in those entries in which this Court cannot separate out the hours.

The Court finds that some of the unique issues presented in this prisoner litigation go beyond the average knowledge of a practicing attorney, and therefore, only a portion of the research hours will be deducted.  Hampton Young will have 60 hours deducted and Norman Newlon will have 10 hours deducted for unreasonable research.

Further review by this Court finds more particular examples of hours which should be deducted as unreasonable.  An entry on 5/7/03 includes "draft complaint with injunctive relief."   However, Plaintiff had already filed their first Complaint on January 24, 2003 and then removed the request for injunctive relief in their Amended Verified Complaint on August 11, 2003.   Therefore, no Complaint after that entry contains any prayer for injunctive relief and therefore should not be charged to Defendants.

Defendants argue that when Norman Newlon appears on July 31, 2003 he is charging for "research and drafting factual section of Amended Complaint."   Without further explanation, something

14

Plaintiff's counsel lack on many entries, this Court cannot find that Norman Newlon should be charging to get "up to speed" on the facts of the case and write the factual section of the Amended Complaint when Hampton Young was already familiar with the facts and had drafted the original Complaint. This billing was excessive and unreasonable and will be deducted.

On October 12 and 13, 2003, Tom Sedar spent a total of 34 hours preparing and doing depositions. However, Mr. Sedar does not provide information on who was deposed or why and Defendants and the actual depositions show that the deposition on October 13, 2003 did not take 12 hours. Therefore, Mr. Sedar's hours will be deducted.

Defendants argue that the paralegal's hours should be deducted for lack of documentation. The paralegal, Marla Cox, billed most of her hours between November 10, 2003 to December 16, 2003. However, it is difficult for this Court to discern what exactly her function was in preparing for trial. The entries only state "worked on notebooks" or "organized file." Even though this Court finds that Plaintiff's counsel should have expounded their explanations, it will not deduct any of the paralegal's hours

because the hours charged are reasonable considering the facts and issues of law.

This Court will reduce the hours on the following entries due to no relevance to the case at hand:

4/12/2002: Hampton Young: TC w/ client re: rent lien issue, draft attorney's lien for rent w/letter to Jubilee House.   0.9 hours.

4/23/2002: Hampton Young: Consultation w/client re: details of foot injury and issues of case- drafted attorney's lien for Shatto's Frontier Drug.  2.4 hours.

4/30/2002: Hampton Young: Draft attorney's lien and letter to Rocky Mountain Recovery.  0.8 hours.

5/9/2002: Hampton Young: Consultation w/client re: firing from restaurant & complaints while incarcerated.   1.2 hours.

7/10/2002: Hampton Young: Draft another version of complaint adding medical malpractice.  1.9 hours.

7/19/2002: Hampton Young: Consultation w/client re: foot infection, pain and status of injury, issues w/Dr. Huitt & SS Disability hearing scheduled November 4, 2002, draft attorney liens for Vandel Pharmacy, Dr. Ribnik & David Pearson.  1.0 hour.

11/21/2002: Hampton Young: Consultation w/client re: complaint & draft liens for Drakes Pharmacy & Dr. Thai. 1.9 hours.

The billing for attorney's liens, complaints never filed, post incarceration events such as "firing from restaurant" and SSD

hearing are unmindful of Plaintiff's counsels' duty to present only those hours spent in preparation of litigation.

The Court finds that of the 710.75 hours billed, 91.10 hours were unnecessary, irrelevant, duplicative or time spent on unsuccessful claims. Accordingly, the Court will award Plaintiff's attorneys' fees for 619.65 hours.[4]

B.   **The Rate**.

"The district court should base its hourly rate award on what the evidence shows the market commands for [civil rights] or analogous litigation." Case, 157 P.3d at 1255; See Also Beard v. Teska, 31 F.3d 942, 955-57 (10th Cir. 1994).  Plaintiff's counsel requested hourly rates of $200 and $175 per hour based on attorney expertise and also requested $45 per hour for their paralegal.  A recent survey of Wyoming attorneys in the 2003 Member Survey puts a rate of more than $150 in the top 17 percent of rates charged in Wyoming.[5]

---

[4]  Tom Sedar 153.30 hours; Tom Sedar 25.50 hours(travel time); Hampton Young 239.10 hours; Hampton Young 20.00 hours (travel time); Norman Newlon 55.75 hours; Norman Newlon 15.50 hours (travel time); and Marla Cox 68.75 hours.

[5]  Question 32 of the survey asked "If you charge on an hourly basis, what is your usual hourly rate?"  17.2% answered more than $150.00.

17

Defendants argue that this case was simply a claim for monetary damages and was not complex and therefore should not be billed at a high rate. Defendants point out that Plaintiff abandoned any pretense of being a member of a protected class and any claim for injunctive relief and only sought money. Defendant contends that all Plaintiff had to do was show a constitutional violation with resulting damages and Plaintiff's counsel designated the case as "non-complex." While this Court agrees with Defendants that Plaintiff had little difficulty obtaining discovery, no motions to strike experts were filed, and discovery was straightforward, the Court disagrees that there was no novelty of the legal questions presented. Plaintiff's counsel was presented with legal questions of limited case law, if any, relating directly to the same fact pattern.

Plaintiff's attorneys have all been practicing law for at least 15 years. This places Plaintiff's attorneys in the top 17 percent of the practicing attorneys in Wyoming. As a result, Plaintiff's attorneys can charge a higher hourly rate. The Court finds $175.00 per hour for Tom Sedar and $150.00 for Norman Newlon and Hampton Young to be a reasonable hourly rate. In addition, the Court will cut in half the above-mentioned rate for time spent traveling. Accordingly, the Court will award Plaintiff attorneys'

fees as follows: Tom Sedar 153.30 hours at $175.00 per hour; Tom

Sedar 25.50 hours at $87.50 per hour(travel time); Hampton Young

239.10 hours at $150.00; Hampton Young 20.00 hours at $75.00 per

hour (travel time); Norman Newlon 55.75 hours at $150.00 per hour;

Norman Newlon 15.50 hours at $75.00 an hour(travel time); and Marla

Cox 68.75 hours at $45.00 an hour - totaling $79,016.25.

  C. **Fee Enhancement**.

  Plaintiff's counsel requests a risk factor enhancement of up

to no more than one-third of the hourly fee award.  Plaintiff seeks

the "fee enhancement" asserting that some of the factors listed in

<u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir.

1974) should increase the lodestar amount by one-third.  This Court

agrees that factual and legal issues presented in this case were

unique, but this is not the determinative factor in the analysis.

  There is a strong presumption that the lodestar is the

reasonable fee, and the fee applicant bears the burden "of showing

that 'such an adjustment is necessary to the determination of a

reasonable fee.'" <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562

(1992).  The Supreme Court has, since <u>Johnson</u>, severely restricted

the court's discretion to adjust the lodestar upward.  <u>See</u>

<u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>,

478 U.S. 546, 565 (1986) ("'Novelty [and] complexity of the

issues,''the special skill and experience of counsel,' the 'quality
of representation,' and the 'results obtained' from the litigation
are presumably fully reflected in the lodestar amount, and thus
cannot serve as independent bases for increasing the basic fee
award.").

However, the Supreme Court has recognized a fee enhancement
when Plaintiff's counsel took a large risk in non-payment in order
to award attorneys who take undesirable but necessary for the
public good cases.  The Supreme Court in <u>Pennsylvania v. Delaware
Valley Citizen's Council for Clean Air</u>, 483 U.S 711, 730-31 (1987)
stated:

> The risk of nonpayment should be determined at the
> beginning of the litigation.  <u>Lewis v. Coughlin</u>, 801 F.2d
> 570, 576 (CA2 1986); <u>Ramos v. Lamm</u>, 713 F.2d 546, 558
> (CA10 1983). . . .The matter may have been difficult,
> wearing, and time consuming, but that kind of effort has
> been recognized in the lodestar award.
>
> [i]f it be assumed that this is one of the exceptional
> cases in which enhancement for assuming the risk of
> nonpayment is justified, we conclude that doubling the
> lodestar for certain phases of the work was excessive.
> We have alluded to the uncertainties involved in
> determining the risk of not prevailing and the burdensome
> nature of fee litigation.  We deem it desirable and an
> appropriate application of the statute to hold that if
> the trial court specifically finds that there was a real
> risk-of-not-prevailing issue in the case, an upward
> adjustment of the lodestar may be made, but, as a general
> rule, in an amount no more than one-third of the
> lodestar. Any additional adjustment would require the
> most exacting justification.  This limitation will at

once protect against windfalls for attorneys and act as some deterrence against bringing suits in which the attorney believes there is less than a 50-50 chance of prevailing. Riskier suits may be brought, and if won, a reasonable lodestar may be awarded, but risk enhancement will be limited to one-third of the lodestar, if awarded at all.  Here, even assuming an adjustment for risk was justified, the multiplier employed was excessive.

Third, whatever the risk of winning or losing in a specific case might be, a fee award should be informed by the statutory purpose of making it possible for poor clients with good claims to secure competent help. Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market. Here, there were no such findings.
An Attorney's fee award should be only as large as necessary to attract competent counsel and one relevant factor bearing on high-risk is whether other counsel had declined to take the case because there was little or no prospect of earning a fee.  Lewis v. Coughlin, 801 F.2d 570, 576 (CA2 1986).

Id.

Plaintiff argues that applying the above-mentioned risk factors to the case at hand, Plaintiff's counsel is entitled to a fee enhancement of one-third.  Plaintiff notes that Wyoming is a very conservative state and does not easily tolerate anyone who is different.  Plaintiff's counsel took on the publicity inherent in filing an action against the Wyoming Women's Center and took on the representation of a person found by this court to be a person of ambiguous gender.

Here, Plaintiff has not shown why the lodestar amount is unreasonable or why the quality of representation is not reflected in the product of the reasonable number of hours times the reasonable hourly rate.  Plaintiff's counsel are all charging the upper limit in the billable rate for Wyoming attorneys.  Plaintiff has not shown that this case is one where the attorneys' work is so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence.

Plaintiff's counsel attempts to discuss the negative effects of publicity this case could have on their future practice however, counsel was responsible for notifying the media and discussing the case during the course of the trial.  If counsel was so concerned about the future impacts, they would have kept the case on a lower, quieter level.  In addition, Plaintiff's counsel has failed to show this Court that no other attorney in the State of Wyoming would have taken this case.  This Court respects Plaintiff's counsel for taking on an unique case which this Court hopes will cause positive changes in policy at the Wyoming Women's Center.  However, in view of all the factors involved in this case, the Court finds the lodestar amount adequately reflects the value of the representation including the risk-factor and finds that the fee-shifting statute of 42 U.S.C. § 1988 provided enough incentive without the fee

enhancement to take the case and therefore Plaintiff's request for a fee enhancement is denied.

D.    **Costs**.

"For items not reimbursable as attorney's fees under § 1988, the general costs statute, 28 U.S.C. § 1920, is controlling." Case, 157 P.3d at 1258 (quoting Ramos, 713 F.2d at 560; 28 U.S.C. § 1920(4)). Of course, the burden is on the prevailing plaintiff to establish the amount of compensable costs and expenses to which they are entitled. Prevailing parties necessarily assume the risks inherent in a failure to meet that burden. Case, 157 P.3d at 1258. Any items that are normally billed separately to a paying client may be awarded if itemized with sufficient detail to assess whether they were necessary to the litigation.   See Bee v. Greaves, 910 F.2d 686, 690 (10th Cir. 1990). This Court recognizes that nearly everything is billed to the client so the only remaining issue is whether each cost claimed was necessary to the litigation.

Some costs claimed cannot be analyzed because the billing statements lack specificity. Some examples are entries that simply state "Medical Records", "Postage", "Photocopies", "Meals", and "Hotel Charges." The lack of specificity creates great difficulty in reviewing the costs and therefore costs that cannot be scrutinized or logically assigned will not be awarded or reduced.

Plaintiff's counsel listed various Medical Records expenses from January, 2002 to September 2002. However, while these records might have been associated with Plaintiff's ambiguous gender characteristics and therefore relevant to litigation, this Court finds that it is likely the records were not associated with this litigation since they were from orthopedic offices and more likely associated with her foot injury which was unrelated to this litigation.

As already stated, Plaintiff's counsel lists the following expert and witness fees in their costs. This Court has separated these expert fees out of the Plaintiff's requested costs but they are included in the total amount this Court will order Defendants to pay to Plaintiff's counsel for reimbursement:

    9/2/03:  Expert Witness: Martha Schilling: $3,063.75.
    1/14/04: Witness Fee: Martha Schilling: $2,000.00.
    1/16/04: Expert Witness-David Hellman: $6,376.21.
    1/22/04: Expert Witness-Dr. Matthew Taylor: $1,965.00.

On January 13, 2004, Plaintiff's counsel lists "Hotel Charges" for Tom Sedar in the amount of $951.54 and Hampton Young in the amount of $322.40. These hotel charges do not seem to be related to the litigation as the bench trial did not begin until a week later. The entries are entirely void of specificity to tell the Court why the hotel charges were necessary, where they were

24

staying and what they were doing.  Therefore, since this Court cannot logically attach those hotel charges to any specific event in litigation they will not be charged to Defendants.

After deducting $15,604.96 from the costs submitted, Plaintiff is owed $10,414.33 in total costs.

## CONCLUSION

For the aforementioned reasons and as detailed above, this Court finds Plaintiff is owed attorneys' fees in the amount of $79,016.25, costs in the amount of $10,414.33, and $13,404.96 in expert fee reimbursement. Accordingly, the Court **ORDERS** Defendants pay Plaintiff $102,835.54 in combined costs and attorneys' fees.

Dated this _____ day of June, 2004.

_____
Clarence A. Brimmer
United States District Court Judge

25